IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| HAILO TECHNOLOGIES, LLC,<br><br>       **Plaintiff,**<br><br>v.<br><br>MTDATA, LLC,<br><br>       **Defendant.** | Civil Case No. 4:17-CV-00077 |

**DEFENDANT MTDATA LLC'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO RULE 12(b)(1) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

  Defendant MtData, LLC ("MtData") (referred to as "Defendant" or "MtData" herein) through its undersigned counsel, hereby moves to dismiss the First Amended Complaint for Patent Infringement filed by Plaintiff Hailo Technologies, LLC (referred to as "Plaintiff" or "Hailo" herein) for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Specifically, Hailo lacks standing to bring and maintain this infringement suit against MtData in its own name because it is not the proper assignee of all substantial rights in U.S. Patent No. 6,756,913 (referred to as the "'913 Patent" herein) as required by law.

### I. FACTUAL AND PROCEDURAL BACKGROUND

 A. Procedural Background.

  On January 11, 2017, Hailo filed its Complaint for Patent Infringement in its own name against MtData for alleged infringement of the '913 Patent. [Dkt. 1]. MtData filed its Motion to Dismiss for Failure to State a Claim Pursuant to Federal Rule of Civil Procedure 12(b)(6) on

February 13, 2017 [Dkt. 10], and Hailo filed its Opposition in Response on March 2, 2017 [Dkt. 13]. On March 21, 2017, the Court entered an order denying MtData's Motion to Dismiss for Failure to State a Claim Pursuant to Federal Rule of Civil Procedure 12(b)(6) as moot and ordering Hailo to file its Amended Complaint by March 28, 2017 [Dkt. 14]. Hailo filed its First Amended Complaint for Patent Infringement (referred to as the "First Amended Complaint" herein) on March 28, 2017 [Dkt. 18]. MtData then filed an Agreed Motion for Extension of Time to Answer or Otherwise Respond on April 4, 2017 [Dkt. 22]. On April 5, 2017, the Court entered an order granting the agreed motion and setting April 18, 2017 as the deadline for MtData to answer or otherwise respond to the First Amended Complaint [Dkt. 24]. After MtData requested the assignment agreement between the named inventor of the '913 Patent Mr. Mourad Ben Ayed (referred to as "Mr. Ayed" herein) and Hailo, Hailo finally produced to MtData for the first time what it represented to be the full "assignment agreement" on Friday, April 14, 2017. (The purported "assignment agreement" is attached as Exhibit A to a Revenue Sharing Agreement between Mr. Ayed, as Assignor, and Hailo, as Assignee.) The production of this "assignment agreement" which now included the Revenue Sharing Agreement necessitated the filing of a second Agreed Motion for Extension of Time for MtData to Answer or Otherwise Respond because MtData required additional time to assess whether Hailo had standing to file this suit, and to prepare its response to the First Amended Complaint [Dkt. 28]. On April 18, 2017, the Court entered an order granting the second agreed motion and setting April 25, 2017 as the deadline for MtData to answer or otherwise respond to the First Amended Complaint [Dkt. 30].

### B. Mr. Ayed is owner of the '913 Patent.

In the First Amended Complaint, Hailo alleges that it is the owner by assignment of the '913 Patent. *See* First Amended Complaint at ¶ 8. The '913 Patent names Mr. Ayed as its inventor, and no assignee is named therein. *Id.* at Exh. A. According to the undersigned counsel's review of the assignment records publicly on file with the U.S. Patent and Trademark Office (the "PTO"), no assignment at law of any kind has been made of Mr. Ayed's rights in the '913 Patent, and Mr. Ayed has not divested his ownership rights in the '913 Patent.

### C. The assignment agreement fails to transfer all substantial rights under the '913 Patent to Hailo.

MtData would respectfully posit that the Revenue Sharing Agreement and purported "assignment agreement" attached as Exhibit A thereto (collectively referred to herein as the "Agreement") between Mr. Ayed, as Assignor, and Hailo, as Assignee, fails to transfer all substantial rights under the '913 Patent. *See* Agreement, attached hereto as **Exhibit 1** and fully incorporated herein.

Paragraph 1.3 of the Agreement purports to assign all rights in the '913 Patent to Hailo:

> **1.3. Assignment of Rights.** To mitigate risk during enforcement, Assignor, as part of this Agreement, hereby assigns to Assignee all right, title, and interest in, and to, the Patent in accordance with the Assignment attached hereto in Exhibit A. This includes, without limitation, the right to prosecute, and receive, all damages, royalties, awards and compensation for past, present and/or future infringement. The assignment made hereby covers the Patent and any future patents resulting from a reissue and/or reexamination proceeding relating to the Patent.

Agreement, **Exhibit 1**, p. 1, ¶ 1.3. In consideration, Mr. Ayed reserves and retains the right to share in "all revenue generated from the enforcement, assignment, licensing, commercialization, exploitation, use, practice and/or sale of the Patent":

> **WHEREAS**, Assignee and Assignor wish to collaborate to license or enforce the Patent through Assignee's entity. With that objective, Assignee wishes to acquire all right, title, and interest in the Patent and, in consideration thereof, agrees to share with Assignor any and all revenue generated from the enforcement, assignment, licensing, commercialization, exploitation, use, practice, and/or sale of the Patent;

Agreement, **Exhibit 1**, p. 1, Introductory Recital Paragraph 3.

However, the "Assignment Agreement" does not transfer to Hailo all substantial rights under the '913 Patent because Mr. Ayed reserves and retains a reversionary ownership right in the '913 Patent conditioned on continual, aggressive enforcement and prosecution of the '913 Patent as set forth in Paragraph 1.7:

> **1.7. Reversion to Assignor**. If a period longer than ninety (90) days lapses wherein the Assignee is not actively enforcing the Patent through a pending judicial proceeding and/or actively prosecuting the Patent through a pending administrative proceeding according to Section 1.2, then Assignee shall at Assignor's written request, promptly assign all rights in the Patent to Assignor or to a party designated by Assignor, by executing an assignment document of the same nature as contained in Exhibit A to this agreement. For sake of clarify, Assignor shall not be responsible for any expenses or costs with regard to the execution of the assignment according to Section 1.7.

Agreement, **Exhibit 1**, p. 2, ¶ 1.7. As referenced in Paragraph 1.7 above, Section 1.2 of the "Assignment Agreement" provides as follows:

> **1.2. Ongoing Enforcement Efforts**. Assignee agrees that no period longer than ninety (90) days will lapse wherein the Assignee is not actively enforcing the Patent through a pending judicial proceeding and/or actively prosecuting the Patent through a pending administrative proceeding. Assignee further agrees to initiate judicial proceedings to enforce the Patent against at least three (3) Third Parties within thirty (30) days of the Effective Date.

Agreement, **Exhibit 1**, p. 1, ¶ 1.2.

Pursuant to Paragraphs 1.7 and 1.2 of the Agreement, upon Mr. Ayed's written request, ownership of the '913 Patent and the right to file suit and prosecute/enforce the '913 Patent both revert to Mr. Ayed (or another third party of Mr. Ayed's choosing) if a period longer than ninety (90) days lapses wherein Hailo is not actively enforcing or prosecuting the '913 Patent. *See* Agreement, **Exhibit 1**, pp. 1-2, ¶¶ 1.2, 1.7.

## II.     ARGUMENT AND AUTHORITIES

**A. Legal Standard.**

This Court's subject matter jurisdiction over Hailo's patent infringement claims is dependent on Hailo's standing to assert those claims. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102, 140 L. Ed. 2d 210, 118 S. Ct. 1003 (1998) (holding "[s]tanding to sue is part of the common understanding of what it takes to make a justiciable case"). Standing must exist at the time the suit is brought. *See Sicom Systems v. Agilent Techs.*, 427 F.3d 971, 975-76 (Fed. Cir. 2005). Without standing, this Court lacks jurisdiction and has no authority to hear this case or grant any relief requested. *See United States v. Morton*, 467 U.S. 822, 828, 81 L. Ed 2d 680, 104 S. Ct. 2769 (1984). Subject matter jurisdiction cannot be waived and must be examined by the Court before any other issue is resolved. *See Steel Co.*, 523 U.S. at 102. As the plaintiff, Hailo has the burden to prove standing. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, 128 L. Ed. 2d 391, 114 S. Ct. 1673 (1994).

Article III standing to sue for patent infringement "derives solely from the Patent Act. Section 281 of Title 35 of the United States Code provides: 'A patentee shall have remedy by civil action for infringement of his patent.'" *Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1346 (Fed. Cir. 2001). "The term 'patentee' is defined in the Act under section 100(d) as including not only the patentee to whom the patent issued, but the successors in title to the patentee. This has been interpreted to require that a suit for infringement must ordinarily be brought by a party holding legal title to the patent." *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1092-1093 (Fed. Cir. 1998) (citing *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1578-79 (Fed.Cir.1991)). Thus, "if the patentee transfers all substantial rights under the patent, it amounts to an assignment and the assignee may be deemed

the effective patentee under 35 U.S.C. § 281 for purposes of holding constitutional standing to sue another for patent infringement in its own name." *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1377 (Fed. Cir. 2000). Ordinarily, "the owner of a patent or the owner's assignee can commence an action for patent infringement, but a licensee alone cannot," unless the licensee holds "all substantial rights" in the patent. *Calgon Corp. v. Nalco Chem. Co.*, 726 F. Supp. 983, 985 (D. Del. 1989); *H.R. Techs., Inc. v. Astechnologies, Inc.*, 275 F.3d 1378, 1384 (Fed. Cir. 2002).

A licensee normally does not have standing to sue without the joinder of the patentee (to prevent multiplicity of litigation), an exclusive license may be treated like an assignment for purposes of creating standing if it conveys to the licensee all substantial rights. *Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 875 (Fed. Cir. 1991) (emphasis added). The Federal Circuit has defined all substantial rights as those rights sufficient for the licensee or assignee to be "deemed the effective patentee under 35 U.S.C. § 281." *Prima Tek II*, 222 F.3d at 1377. "The title of the agreement at issue" - whether it is termed a "license" rather than an "assignment" - "is not determinative of the nature of the rights transferred under the agreement; actual consideration of the rights transferred is the linchpin of such a determination." *Intellectual Prop. Dev.*, 248 F.3d at 1344; *see also Waterman v. Mackenzie*, 138 U.S. 252, 256 (1891) ("Whether a transfer of a particular right or interest under a patent is an assignment or a license does not depend upon the name by which it calls itself, but upon the legal effect of its provisions.") (emphasis omitted). Because each license and assignment is unique, therefore the court must ascertain the intention of the parties and examine the substance of what the licensing agreement granted to determine if it conveys all of the substantial rights in the

patent and is sufficient to grant standing to the licensee.  *Sicom Sys.,* 427 F.3d at 977 (citing *Pfizer Inc. v. Elan Pharm, Research Corp.*, 812 F. Supp. 1352, 1358 (D. Del. 1993)).

**B. The Agreement in this case is a license, not an assignment.  The Agreement failed to transfer all substantial rights under the '913 Patent because Mr. Ayed reserved and retained substantial ownership and reversionary performance-based rights in the '913 Patent.**

Hailo's First Amended Complaint should be dismissed for lack of subject matter jurisdiction because the Agreement failed to transfer all substantial rights under the '913 Patent to Hailo and amounts to a license, not an assignment.  Thus, the Agreement fails to confer standing on Hailo before this suit was filed.  When we look at the scope of rights granted and retained by the Agreement in this case, Paragraphs 1.7 and 1.2 of the Agreement show that, upon Mr. Ayed's written request, ownership of the '913 Patent and the right to bring suit and prosecute/enforce the '913 Patent both revert to Mr. Ayed (or another third party of Mr. Ayed's choosing) if Hailo is not continually and satisfactorily enforcing or prosecuting the '913 Patent. *See* Agreement, **Exhibit 1**, pp. 1-2, ¶¶ 1.2, 1.7.  This demonstrates the Agreement amounts to a license, not an assignment, because Mr. Ayed reserved and retained substantial ownership and performance-based reversionary rights in the '913 Patent.  Therefore, in the Agreement, Mr. Ayed, the inventor and owner, failed to fully and unconditionally transfer to Hailo: (1) ownership of the '913 Patent; and (2) the unfettered right to bring suit and prosecute/enforce the '913 Patent, both of which are substantial, fundamental rights.  Because the Agreement fails to transfer all substantial rights under the '913 Patent to Hailo, it amounts to a license, not an assignment.  This is particularly important in light of the Federal Circuit's statement that "the nature and scope of the [assignee's] purported right to bring suit, together with the nature and scope of any right to sue purportedly retained by the [assignor], is the most important consideration. … Where the [assignor] retains the right to sue infringers, that right often precludes a finding that all

substantial rights were transferred to the [assignee]." *Alfred E. Mann Found. For Scientific Research v. Cochlear Corp.*, 604 F.3d 1354, 1361 (Fed. Cir. 2010) (citations omitted); *see also Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 875 (Fed. Cir. 1991) (noting that transferor's absolute grant without reservation to transferee of right to sue was "particularly dispositive" of all-substantial rights inquiry).

Further, the Federal Circuit's decisions in *Propat* and *Acceleration Bay* stand for the proposition that retaining a performance-based reversionary right, as the Agreement does in this case, is a significant factor supporting a finding that an agreement does not transfer all substantial rights and amounts to a license. *Propat Int'l Corp. v. RPost US, Inc.*, 473 F.3d 1187, 1191-92 (Fed. Cir. 2007); *Acceleration Bay LLC v. Activision Blizzard, Inc.*, Civil Action No. 15-228-RGA, 2016 U.S. Dist. LEXIS 72390, at *13-14 (D. Del. June 3, 2016). In both cases, the applicable agreements made additional reservations of rights for assignor beyond just revenue sharing, and both agreements were held to be licenses, not assignments, which did not confer standing to sue. *See id.*

> Finally, if Propat fails to meet certain specified benchmarks in its efforts to exploit the patent, Authentix is free to terminate the contract, at which point all of Propat's rights with respect to the patent come to an end. Authentix's power to terminate the agreement and end all of Propat's rights in the patent if Propat fails to perform up to the specified benchmarks, although not dispositive, is yet another indication that Authentix retains a significant ownership interest in the patent.

*Propat Int'l Corp.*, 473 F.3d at 1191-92.

> The agreement also provides that "[i]f [AB] has not actively pursued monetization of the [patents-in-suit] . . . within six (6) months from the Effective Date of this Agreement, [Boeing] at its option shall have the right to have the [patents-in-suit] re-assigned back to [Boeing]." … This too supports a finding that Boeing did not transfer all substantial rights. *Alfred E. Mann*, 604 F.3d at 1360-61 (listing "the nature of license provisions regarding the reversion of rights to the licensor following breaches of the license agreement" as a right to be examined). While some of the "termination provisions" in the agreement, along with the "right

> to receive infringement damages . . . [as] compensation," are consistent with an "assignment . . . 'by way of mortgage,'" this provision is different. *Vaupel*, 944 F.2d at 875 (quoting *Waterman*, 138 U.S. at 256). It goes beyond payment obligations and subjects AB's licensing efforts to the demands of Boeing. If AB does not comply, Boeing may retake possession of the patents.

*See Acceleration Bay LLC*, 2016 U.S. Dist. LEXIS 72390, at *13-14; *see also VirnetX, Inc. v. Microsoft Corp.*, No. 6:07 CV 80, 2008 U.S. Dist. LEXIS 94854, 2008 WL 8894682, at *6 (E.D. Tex. June 4, 2008) (concluding that transferor's reversionary right in the patents-in-suit, which would be triggered if the transferee did not pay the transferor a fixed amount by a certain date indicated the transferor retained an interest in the patents); *Sherman & Assocs., Inc. v. Oxford Instruments*, PLC, No. C 11-00827 CRB, 2012 U.S. Dist. LEXIS 2806, 2012 WL 78462, at *6 (N.D. Cal. Jan. 10, 2012) (treating a restriction as significant where the licensee's rights would automatically terminate were the licensee to cease operating, merge, be acquired or go through liquidation).

Finally, in *Aspex Eyewear, Inc.,* the Federal Circuit found that a hard reversion date alone is sufficient to demonstrate an agreement is a license, not assignment. *Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1343 (Fed. Cir. 2006).  In *Aspex*, the Federal Circuit distinguished cases (e.g. *Prima Tek II* and *Vaupel*) where "the term of the agreement existed potentially for the life of the respective patents, and it was presumable that the transferred patent would never return to the assignor. In *Prima Tek II* and *Vaupel*, the reversionary right was triggered by events like bankruptcy, paying off a mortgage, or one-year renewals with no fixed termination date.  Similarly, an assignor "does not retain a substantial right in a patent merely by reserving a reversion in the patent contingent upon the [assignee's] financial distress or the [assignee's] cessation of production[.]" *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1252 (Fed. Cir. 2000).  Our case is, of course, distinguishable from the facts contained in these two cases.

Although the Agreement in this case does not provide a "hard" reversion date as in *Aspex*, it does provide a very short timetable for reversion of ownership to Mr. Ayed if Hailo fails to continuously and satisfactorily enforce the '913 Patent. Therefore, unlike *Prima Tek* and *Vaupel*, it is not presumable (1) that the term of the Agreement in this case existed potentially for the life of the respective patents; and (2) that the transferred patent would never return to the assignor. *See* Agreement, **Exhibit 1**, pp. 1-2, ¶¶ 1.2, 1.7. Namely, *if a period longer than ninety (90) days lapses wherein Hailo is not actively enforcing or prosecuting the '913 Patent*, Mr. Ayed may retake possession of the Patents. *See id.* This demonstrates that Mr. Ayed retains a significant ownership interest in the '913 Patent as well as control and supervision over enforcement of the '913 Patent, and he failed to transfer all substantial rights under the '913 Patent to Hailo, making the Agreement a license which does not confer Hailo with standing to sue. Therefore, Hailo's First Amended Complaint should be dismissed for lack of subject matter jurisdiction.

### III.  CONCLUSION

For the foregoing reasons, Defendant MtData respectfully requests that the Court issue an order dismissing Hailo's First Amended Complaint for lack of subject matter jurisdiction and grant MtData any and all other relief to which it is entitled at law.

>Respectfully Submitted,
>
>By: /s/Lawrence A. Waks
>    Lawrence A. Waks
>    Texas State Bar No. 20670700
>    S.D. Tex. Bar No. 15027
>    Email: lawrence.waks@wilsonelser.com
>    Jennifer Murphy
>    Texas State Bar No. 24027560
>    S.D. Tex. Bar No. 2789457
>    Email: jennifer.murphy@wilsonelser.com
>    **WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP**
>    Bank of America Plaza
>    901 Main Street, Suite 4800
>    Dallas, Texas 75202-3758
>    (214) 698-8000 Phone
>    (214) 698-1101 Facsimile
>
>    **ATTORNEYS FOR DEFENDANT MTDATA, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record in accordance with the Federal Rules of Civil Procedure, on this **25th** day of **April, 2017**.

>/s/Lawrence A. Waks
>Lawrence A. Waks